UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERGIO DIAZ and RETHA
CONNERS, individually and
on behalf of all others
similarly situated,

       Plaintiffs,

       v.

FORD MOTOR COMPANY,

       Defendant.
_____/

Case No. 23-10029

Hon. George Caram Steeh

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS (ECF NO. 12)

Plaintiffs have brought this putative class action against Ford Motor Company ("Ford"), alleging breach of implied warranty, fraud, and other claims based upon a safety defect in their Ford vehicles. The defect is the subject of a voluntary recall. As a result of the recall, and Plaintiffs' inability to demonstrate that they suffered an injury in fact, the court concludes that the complaint must be dismissed on standing and mootness grounds.

BACKGROUND FACTS

Plaintiffs Sergio Diaz and Retha Conners own vehicles manufactured by Ford that they allege contain defective parts. Diaz owns a 2017 Escape and Conners owns a 2014 Escape. Both vehicles are equipped with

-1-

defective shift cable bushings, the component that connects a vehicle's transmission and gear shift. These bushings degrade and detach over time, allowing the vehicle to slip out of the intended gear, causing rollaways or other unintended movement. The defective bushings are identified as Hilex (Hytrel 4556) Shift Bushings.

As a result of the bushing defect, Ford issued a safety recall of 2013-2014 Ford Escape and 2013-2016 Ford Fusion models in 2018. Since then, Ford has issued four additional recalls, most recently in June 2022, encompassing nearly 3 million vehicles. The vehicles affected by the recalls are the following models: 2013-2019 Ford Escape, 2013-2016 Ford Fusion, 2013-2018 Ford C-Max, 2013-2021 Ford Transit Connect, and 2015-2018 Ford Edge.

With respect to the 2018 recall, Ford described the problem as stemming from a certain lubricant and contaminant: "For Fusion and Escape vehicles built between May 15, 2013 and September 15, 2013, the supplier applied a lubricant to the bushing that attaches the shifter cable to the 6F35 transmission during the supplier component process that, over time, may cause the bushing to degrade." ECF No. 1-3. "For Fusion vehicles built between June 2, 2014 and August 31, 2015, a contaminant has been identified on bushings analyzed by Ford. This population is

exhibiting an elevated rate of bushing degradation due to the source of this contamination." *Id.* Ford offered to replace the bushings with new bushings "produced free of known contaminants from a material that is more robust." *Id.*

The 2022 recall safety report describes a similar bushing defect but states that the "[r]oot cause is unknown. Based on Ford's root cause investigation, heat and humidity have the potential to contribute to the hydrological breakdown of the bushing material." ECF No. 1-15. Ford has offered to replace the defective bushings with "shift bushings [that] are manufactured from a different grade material with a heat stabilizer. Additionally, a cap will be installed over the shift bushing for protection against contaminants." *Id.*; ECF No. 1 at ¶ 9. Ford also offered to reimburse owners for repairs previously made to fix the defect.

Plaintiffs assert that "Ford does not know whether the cap fixes the Bushing Defect, and, on information and belief, the replacement bushings do not remedy the Bushing Defect. Indeed, owners have reported that the replacement bushings disintegrated within three years." ECF No. 1 at ¶¶ 9, 121.

Plaintiff Diaz leased a new 2017 Ford Escape from Sayville Ford in Sayville, New York, in 2017. Upon expiration of the lease in 2020, Diaz purchased the vehicle from Sayville Ford, an authorized Ford dealer. He

alleges that, as a result of the bushing defect, he did not receive the benefit of his bargain and that the value of his vehicle has been diminished. Diaz does not state whether he has presented his vehicle for repair, but he asserts that he "does not accept that the replacement Defective Bushings and remedies provided in Ford's recalls provide a *bona fide* fix for the Bushing Defect." ECF No. 1 at ¶ 23.

Plaintiff Connors makes similar allegations, with respect to a 2014 Ford Escape she purchased in 2017 from Rock Road Auto Plaza in St. Louis, Missouri. Neither Plaintiff alleges that the bushing defect has manifested in his or her vehicle.

Plaintiffs seek to represent a nationwide class of affected vehicle owners, alleging claims under the Magnuson-Moss Warranty Act and state law. Ford seeks dismissal of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

LAW AND ANALYSIS

I.   Standard of Review

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft*

-4-

*v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Additionally, "[c]ourts frequently take judicial notice of federal regulatory agency materials and materials

-5-

available through federal agency websites pursuant to Federal Rule of Evidence 201(b)(2)." *Sharp v. FCA US LLC*, 637 F. Supp.3d 454, 459 (E.D. Mich. 2022).

II. Article III Standing

Ford alleges that Plaintiffs lack standing to pursue their claims. Standing is a jurisdictional requirement: "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction has the burden of demonstrating the three elements of standing: (1) an injury in fact, (2) fairly traceable to the action of the defendant, that (3) is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

A facial challenge to the court's subject matter jurisdiction, as Defendant makes here, "questions merely the sufficiency of the pleadings." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816-17 (6th Cir. 2017). Accordingly, the court accepts the factual allegations in the complaint as true, "just as in a Rule 12(b)(6) motion." *Id.*

In the class action context, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). The Supreme Court has emphasized that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-2208 (2021).

Ford contends that Plaintiffs have failed to allege an injury because the bushing defect has not manifested in their vehicles. However, Plaintiffs need not necessarily plead the manifestation of the defect in order to establish an injury. Plaintiffs allege that Ford concealed the defect, which diminished the value of their vehicles, and had they known their vehicles contained a defective part they would have paid less or not purchased them at all. ECF No. 1 at ¶ 184. In general, such allegations establish an economic injury for Article III standing purposes. "When a manufacturer sells a product that is defective, which causes consumers to be misled at the point of sale into paying more and getting less than they believed they were purchasing, the consumers suffer an injury in fact, even if that defect

-7-

does not manifest itself in every individual unit." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017) (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013)); *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 886 (E.D. Mich. 2019) ("Claims of overpayment, wherein a plaintiff paid a premium but did not receive the anticipated consideration, are cognizable injuries in fact.").

As the complaint acknowledges, however, Ford has offered to replace the defective bushings with new bushings made of a different material. In light of the availability of this remedy, and the fact that the defect has not manifested in their vehicles, it is not clear how Plaintiffs have been injured. *See In re McNeil Consumer Healthcare*, 877 F. Supp.2d 254, 273 (E.D. Pa. 2012) (finding that although a refund offer may not defeat standing on its own, "the absence of any allegation that the refund offer was insufficient *based on the experience of a named plaintiff* is fatal"). "A named plaintiff must allege facts showing that he or she *personally* suffered economic loss as a result of an inadequate recall to state a cognizable injury on the basis of a recalled product." *Id.* (emphasis in original).

Although Plaintiffs contend that they were injured by overpaying for their vehicles at the point of sale, they do not plausibly allege that such

-8-

diminished value will persist after the defective bushings are replaced by Ford. *See Hadley v. Chrysler Grp., LLC*, 624 Fed. Appx. 374, 378 (6th Cir. 2015) (no standing to assert damages claims against part manufacturer when "the repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based."); *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (finding that although the plaintiffs "may have been injured at the time of purchase . . . [they] have failed to adequately allege that the Defect remains after the recall remedy has been completed"); *Peckerar v. Gen. Motors, LLC*, 2020 WL 5289919, at *2 (C.D. Cal. May 27, 2020) ("As a matter of common sense . . . the economic loss injury based on the vehicle's decreased value no longer exists if Defendant has, through the recall, offered to remove the complained-of defect free of charge."); *Comes v. Harbor Freight Tools USA, Inc.*, 2021 WL 6618816, at *5 (C.D. Cal. Sept. 29, 2021) (plaintiffs who suffered property damage as a result of defective product suffered injury, whereas plaintiff whose only "concrete injury amounts to the money he paid for a defective product" did not suffer injury because it was remedied by recall).

Plaintiffs claim that because Ford has not precisely diagnosed the root cause of the problem, its solution is "ineffective." They allege no factual

basis, however, for the proposition that the new bushings supplied by Ford are defective, prone to degrading, or will otherwise fail to fix the problem. *Cf. Peckerar v. Gen. Motors, LLC*, 2020 WL 6115083, at *1, 5 (C.D. Cal. Aug. 17, 2020) (plaintiffs established injury when they alleged facts that the recall was ineffective, including that the "available replacement vacuum pump is merely a new defective pump" and "scores of Class Members who received the Recall repair have complained to NHTSA that they still experience the Class Defect, and others complain the 'repair' made braking response worse"); *Reynolds v. FCA US LLC*, 546 F. Supp.3d 635, 643 (E.D. Mich. 2021) (repair program did not render claims moot because plaintiffs alleged that the repairs did not cure the steering problem they experienced and that it reoccurred). Plaintiffs do not make factual allegations that call into question the effectiveness of the recall similar to those made in *Peckerar* and *Reynolds*. Plaintiffs' allegation that two Fusion owners have continued to experience problems after the recall (ECF No. 1 at ¶¶ 9, 121), in itself, does not create a plausible inference that the new bushings are defective, particularly given that the recalls have been ongoing since 2018. Plaintiffs' assertion that the defect will remain after the recall repairs are completed is conclusory and speculative. The possibility that the recall repair will fail to fix the problem is not sufficiently concrete to

constitute an injury in fact. *See Ramirez*, 141 S.Ct. at 2211 (plaintiffs' allegations of a mere risk of future harm did not establish Article III standing); *Hadley*, 624 Fed. Appx. at 380 ("The plaintiffs' assertion that the ORC Module repair may not be effective does not evidence an actual or imminent injury.").

Plaintiffs also contend that the recall does not remedy other categories of damages, such as damage caused by rollaway accidents, or towing and rental fees. If Plaintiffs actually alleged that they suffered such damages, they would have concrete injuries that could provide a basis for standing. But neither Diaz nor Conners have alleged that they incurred any economic loss beyond the diminished value of their vehicles. And they have not plausibly alleged that the diminished value will remain after the repairs are completed. Accordingly, the court finds that the named Plaintiffs lack standing to assert a claim for damages.[1]

III. Mootness

---

[1] Some courts have found standing to exist based upon claims of overpayment injury, but determined that the overpayment claims were rendered prudentially moot because a voluntary NHTSA recall provided a complete remedy. *See Solak v. Ford Motor Co.*, No. 23-CV-10064, 2023 WL 4628456, at *3 (E.D. Mich. July 19, 2023); *Sharp*, 2022 WL 14721245, at *5. The court addressed prudential mootness in lieu of standing in *Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937, at *4 (E.D. Mich. Mar. 22, 2023) (Steeh, J.).

Plaintiffs also seek "appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Bushing Defect." ECF No. 1 at PageID 97-98. To the extent Plaintiffs have standing to request such relief, the court finds their request to be moot. Through the NHTSA recall process, Ford has already notified vehicle owners of the defective bushings and committed to replace them free of charge. Under similar circumstances, the Sixth Circuit has held that claims for injunctive and declaratory relief are moot. *Hadley*, 624 Fed. Appx. at 379.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Accordingly, federal courts lack the power to adjudicate moot "questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). In *Hadley*, the court found that "there is nothing left for this court to order New Chrysler to do" when the auto manufacturer had already notified owners of

the defect and promised to repair it without charge. *Hadley*, 624 Fed. Appx. at 379-80.

To the extent that Ford's promise to remedy the bushing defect does not render Plaintiffs' claims for injunctive and declaratory relief moot as a constitutional matter, the court would find them moot under the doctrine of prudential mootness, a "cousin" to Article III mootness. *See Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937, at *4 (E.D. Mich. Mar. 22, 2023) (finding claims prudentially moot after NHTSA recall) (Steeh, J.). "In some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce of U.S. of America v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980).

> Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. Sometimes the plaintiff will seek an injunction against the enforcement of a regulation the relevant agency later offers to withdraw on its own. Sometimes the plaintiff will seek an order forcing a department to take an action that it eventually agrees to take voluntarily. However it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap.

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.); *see also Greenbaum v. EPA*, 370 F.3d 527, 534-35 (6th Cir. 2004); *Sharp*, 637 F. Supp.3d at 463 ("Most Circuits, including the Sixth, have adopted the doctrine of prudential mootness.").

In *Winzler*, the plaintiff alleged that certain Toyota Corollas had defective engines that made them prone to stall without warning. After the lawsuit was filed, Toyota announced a recall under the National Traffic and Motor Vehicle Safety Act, which required Toyota to notify owners of the defect and make free repairs. 49 U.S.C. §§ 30118(c), 30120. The "process is overseen by the National Highway Transportation Safety Administration ("NHTSA"), an agency of the Department of Transportation that can issue stiff fines if the company fails to carry out the recall to its satisfaction." *Winzler*, 681 F.3d at 1209.

The *Winzler* court concluded that the recall rendered the lawsuit prudentially moot. Although the case was not brought against the government, the plaintiff "has in hand a remedial commitment from our coordinate branches all the same." *Id.*

> By filing documents with NHTSA notifying it of a defect, Toyota set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process. By virtue of its filing, Toyota is now obliged by statute to notify all relevant registered owners of the defect. The company has assumed as well the

-14-

> statutory duty to "remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy." And Toyota has subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA.
>
> Given all this, there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits. Congress and the Executive have committed to ensure Ms. Winzler precisely the relief she seeks.

*Winzler*, 681 F.3d at 1211 (citations omitted); *see also Hadley,* 624 Fed. Appx. at 379 (claims for injunctive and declaratory relief moot after statutory recall); *Cheng v. BMW of N. Am.*, *LLC*, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (finding case "highly analogous" to *Winzler*); *Flores v. FCA US LLC*, 2020 WL 7024850, at *4 (E.D. Mich. Nov. 30, 2020) ("Plaintiffs in the present matter have sustained no actual injury that can be redressed, as repairs have been made to the class vehicles for free."); *Sharp*, 637 F. Supp.3d at 465-68 (national recall rendered lawsuit prudentially moot); *Solak v. Ford Motor Co.*, No. 23-CV-10064, __ F. Supp.3d __, 2023 WL 4628456, at *4 (E.D. Mich. July 19, 2023) (same).

Similarly, by issuing a recall, Ford has subjected itself to the continuing oversight of NHTSA, which monitors "each safety recall to make sure owners receive safe, free, and effective remedies from manufacturers according to the Safety Act and Federal regulations."

https://www.nhtsa.gov/recalls; *see also* 49 U.S.C. § 30120(e) ("If the Secretary decides a manufacturer has not reasonably met the remedy requirements, the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter."). Ford has offered to repair the vehicles at issue and reimburse owners who have already paid for repairs. Ford's promise to remedy the bushing defect, backed by the NHTSA, renders Plaintiffs' claims for injunctive and declaratory relief prudentially moot. The court recently came to the same conclusion in *Pacheco*, in which Ford offered repairs through a recall process, and which the court views as indistinguishable from this case. 2023 WL 2603937, at *4.

As the court acknowledged in *Pacheco*, "a finding of prudential mootness would not be appropriate if the recall remedy leaves Plaintiffs 'without complete relief.'" *Id.* (quoting *Winzler*, 681 F.2d at 1211-12). "If the party seeking relief can show that 'there exists some cognizable danger of recurrent violation,' some cognizable danger that the coordinate branch will fail and she will be left without a complete remedy, we will continue with the case even in the face of a simultaneous remedial commitment from another branch." *Id.* (citation omitted). A "cognizable" danger is "one perceptible or

recognizable from the evidence before the court" and is "something more than the mere possibility" of failure. *Winzler*, 681 F.3d at 1212.

Here, Plaintiffs here have not alleged a cognizable danger that that the NHTSA recall process will fail to provide them with complete relief. At most, they have raised the "mere possibility" that the new bushings supplied by Ford will not address the problem or that NTHSA will abdicate its duty to properly supervise the recall process. In light of the recall, there is "nothing left for this court to order [Ford] to do" with respect to Plaintiffs' claims for injunctive and declaratory relief. *See Hadley*, 624 Fed. Appx. at 379-80.

## CONCLUSION

Accordingly, based upon Plaintiffs' lack of standing and mootness, IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 12) is GRANTED.

Dated: September 21, 2023          s/George Caram Steeh
                                   Hon. George Caram Steeh
                                   United States District Judge

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 21, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk